Ready to call our first case, Manuel v. NRA Group LLC. Mr. Purr. Good morning, Your Honors. May it please the Court, I'd like to reserve two minutes for rebuttal. That's done. Thank you. Richard Purr, Fineman Correction in Harris, on behalf of the appellant, NRA Group LLC. NRA Group would ask this Court to reverse the decision of the trial court in granting summary judgment as to two specific issues and to remand back to the trial court to allow those issues for which there are genuine issues of material fact to be presented to the trier of fact at trial. These two issues specifically deal with the Telephone Consumer Protection Act, and in two respects. The first is statutory and the level of proofs that have been presented in the case. The second issue deals with primarily all of the evidence regarding the telephone calls themselves. Why should we not treat your client as having waived or more appropriately forfeited these issues? You had an opportunity to make your arguments at summary judgment. You in fact did fight summary judgment hard, and yet the arguments we're seeing here on appeal were arguments that they don't look like they were made at the summary judgment stage, were they? Yes, Your Honor, and I'd like to go through that at three different stages. One is, of course, that the issues were not waived. Taking a look at the motion for summary judgment, which is document 23 on the docket at page 7, we specifically challenge the capacity and the capabilities of the dialer by indicating page 4 of that brief. Moreover, plaintiff failed to provide expert testimony regarding the technical capabilities of the dialer. Since the dialer is a complicated and complex machine, plaintiff's failure to provide expert testimony is detrimental to his TCPA claim. How is that a development of the argument? I thought that your argument at that level in the district court was essentially that you didn't have a beef with the FCC's interpretation, but that your view of it, maybe I should back up and say, I understand your argument here to be that the FCC's just got it wrong, that there can't be a violation of the TCPA unless an automatic dialing system can sequentially or randomly generate numbers. That's what I understand your argument now. Am I correct about that? That's not exact, Your Honor. Our argument mirrors the argument in Dominguez, which is not that the FCC got it wrong. This court didn't say that the FCC got it wrong in Dominguez. This court said that you have to read into the FCC's decision consistent with the statutory language that you either sequential or random number generator as part of the either equipment, machinery, or the capacity to have that, even if it's not used at the time. I thought you were attacking that. You're not attacking that in this case? We are attacking the fact that there's no evidence that had been presented at the trial court that shows that this piece of equipment had capacity to be a random or sequential number generator, even though it was not used as such in that time period. My question to you, Mr. Perr, is where did you make that as an argument to the district court? Not saying, hey, there's no evidence and leaving it at that, but making the argument explicit that, look, this requires you, court, district court, to view this as having a capacity, et cetera, the way the FCC has said, and they didn't show that, and therefore there's a failure of proof, and therefore they're done. That argument, again, is put in, and I will acknowledge that it's more implicit than explicit. Right. And that's the problem, right? But it challenges the proofs in terms of what the evidentiary burden that was needed to be met by the plaintiff. Can I just interrupt you? In your reply brief, you specifically said NRA concedes that its exact arguments regarding the proper interpretation of the TCPA were not raised before this appeal. In light of what I just read to you, I don't understand why you're disputing what Judge Jordan's positive. Because it wasn't expressed raised. It was implicitly raised by... You said were not raised.  I mean, I guess I thought maybe you can argue whatever you want, but I thought you were going to argue that, as you did in your briefing, that it doesn't really matter whether it was raised because this is a question of law. Your Honor, and that's what I was getting to, a three-step process in terms of the waiver argument, which is, one, we believe that it was implicitly identified in the evidentiary issue, again, at that point in the summary judgment brief. Secondly, that even if it wasn't expressly raised, that it doesn't constitute a waiver in much in the way of Romando decision held. And thirdly, that even at its core, a trial court in deciding an issue for summary judgment still needs to make an independent finding, a fact based on the evidence before it, and that the record evidence in this case is completely devoid of anything for the record. The reason for that, I would suggest, is that the entire battleground, as I recall at the district court, was the parties disputing whether or not human intervention was required. That was not the entire battleground. If the court would look at, again, the summary judgment motions, the entirety of that battle went towards a lot of different things about the evidence that was brought forward. At the core of it was this evidence. What was presented by the plaintiff to meet their burden of proof? At the summary judgment stage, that viewed in a light most favorable to the defendant, there was no genuine issue of material fact. You seem to argue, because now I'm puzzled, you seem to argue all about whether it's in predictive mode or power mode or, and I can't remember the last one, the third mode. No matter what of those three modes this dialer of yours was operating in, it had to have some kind of human intervention, right? That's correct, Your Honor. That was one element of our attack on this issue. It wasn't one element. I thought that was the fight. It wasn't until after you lost that fight that we started to see some set of motions, a motion to stay, wait for the D.C. Circuit, a motion asking for a jury instruction to put a legal question in front of the jury, essentially. These were efforts that looked like, and you got some persuading through, at least as far as I'm concerned, to show me that those aren't a shift in the strategy, in the legal strategy and argument you were making at the summary judgment stage. The, Your Honor, in looking at the record, there were two elements and two pieces of evidence that were before the trial court. One was plaintiff presented the dialer manual, the mercury dialer manual and submitted that. Hold on just a second. You're not, you've got limited time, so I'm trying to get you focused. I'm not asking you about your argument now. I understand your argument now. I've read your brief and I understand your argument now. I'm asking you where in the record, in the summary judgment proceedings, did you make the argument to the district court that you are making now? In and around the area of document 23, page 4, which we discussed the need to have expert testimony to talk about the capacities of the dialer, its capabilities. Okay, and that, you're not pointing to anything else? No, that is it. And so, again, as Judge Hardiman correctly pointed out, even with that issue, you have come to a second issue, which is that the argument, the attack on the dialer itself and its entirety as to capacity, as to what it was doing, is not a waived argument where the statute at issue was specifically being attacked below and it's not waived on appeal. Because it's a question of law. Because it's a question of law. But our jurisprudence, I think, is clear that you need exceptional circumstances then, right? Haven't we said that sometimes we will excuse a waiver or forfeiture on a question of law if there are exceptional circumstances? I didn't see that it was the waiver is appropriate where two purposes are met. I mean, I'm reading from Lemando, which is ensuring that necessary evidentiary development occurs, preventing surprise when the case is decided on a basis for which the parties have not presented argument. I mean, it seems to be not that that's when you invoke waiver, not that a condition to And we would suggest that in this case, none of those have been established. Let me just read you what we wrote in Inrate Diet Drugs in 2013. We said that we will still address arguments raised for the first time on appeal in exceptional circumstances. And we retain the discretion exercised on the facts of individual cases to determine what questions may be taken up and resolved for the first time on appeal. So are exceptional circumstances necessary? I don't believe that in two cases, one, the exceptional circumstances being that this is a question of law that, again, was argued in some degree at the trial court. And secondly, even aside from all of that, the trial court still needs to be able to sustain its burden of showing that there's no genuine issue of material fact and granting summary judgment. If no arguments were made in the court. Hold on just a second. You're asserting that there's some independent duty to think of the argument that you didn't make? It sounds like that's what you're saying. The district court's got an independent duty to think of an argument you didn't make based on the record and to then make a judgment on that. No, the district court has to still be able to sustain and show that there's no genuine issue of material fact. When the limited facts before it are twofold. One is a deposition that doesn't talk about number generation and it doesn't talk about sequential or random number generation. And we have a dialer manual that doesn't talk about random or sequential number generation. If you don't make the argument, how is the district court to know what is a material fact and what isn't? It's the argument of counsel that makes facts material or not material, right? Yes, Your Honor. But again, I would go back to document 23, page 4. We specifically said you need an expert to show those things, which the court rejected. Did you need an expert to show that human intervention was required when the Mercury dialer was operating in predictive mode? That we did an expert report to show that the capacity of the physical equipment to be a random or sequential number generator. There's nothing in the record that says that or not. It's just a device that just calls phone numbers. So they introduced a manual. They moved to say there was some preclusive effect from a decision in the Southern District of Florida, which the trial court rejected. And the court just concluded. It really skipped over whether we did even go to the issue of whether it was a random or sequential number generator. It just moved to the next step. Why is that the battleground, the random or sequential? That comes from the language in the statute, right? It comes express congressional intent. That defines an automated telephone dialing system. And as this court noted. But then what about the FCC's order? Aren't you bound by that under the Hobbs Act? Well, no, the Hobbs Act, we're not challenging the FCC's order. And what does the 2015 order say? I think it's 2015. Again, this court, while in a persuasive holding, spoke about. I didn't ask you about us. What does the 2015 order say? Well, the 2015 order is pretty much all over the place in talking about the. Whether something it can whether. And it talks about a test for capacity that is ambiguous and unformed, sort of. When we say it, type of test to say something has the capacity to either be made into an automated or a random or sequential number generator. So it talks about it in terms of in and of itself. A device like the cell phone could be an automated telephone dialing system. If some software or some other capacity isn't the capacity. It doesn't set forth a test for capacity. It's just that you have to identify whether capacity is there. That's the trial court missed its mark. The trial court doesn't do that. And it had no evidence before it from which it could do that. And so therefore, just like in Satterfield, just like in the Ninth Circuit, just as in Dominguez, where both of those courts said there's genuine issues of material fact here regarding random and sequential number generation and the evidence that's before it. And they needed to remand. Okay. Am I able to address the other issue? Well, let me ask my colleagues if they've got additional questions. I don't. Okay. Then you've got your two minutes for rebuttal. Thank you. All right. We'll hear from Mr. Lemberg. Good morning. May it please the court. My name is Sergei Lemberg. I represent the appellee, Pierson Manuel. I don't believe it's necessary to beat the dead horse of waiver anymore, except to point out to the court that, indeed, this is a meritless appeal, not just because the arguments were waived by not having been raised, but they were arguments that were different, completely contrary to what is now being argued on appeal. If you go to the appellant brief, the issue is... Why don't you start, Mr. Lemberg, with what Mr. Purr was telling us. He cited a specific portion of the briefing that they put before the district court and said, that's where it is. That's where we told the district court what was going on. Why is he wrong? Whether or not you need an expert depends on what the issue is. Whether a litigant believes that the issue at hand is beyond an ordinary juror's ability to understand, such that an expert would be helpful. Certainly in this case and in other cases as well, litigants have been successful in establishing that a dialer that is called a predictive dialer is a predictive dialer. The district court was well within its discretion to rule on that issue based on the record before it. The argument that's being made now, today in oral argument, is that that is what raised the random sequential dialer issue. Before we even get to that, though, your position is there was no subject matter jurisdiction in the district court. Is that right? Did I understand you to be making an argument based on the Hobbs Act that the D.C. Circuit has exclusive jurisdiction? The D.C. Circuit in 2003 said predictive dialers are remanded of the statute. I just want to know. I understand what they said. I just want to know whether that's your argument. The answer is yes. Okay. Now, help me understand if there is a difference between a direct challenge to the lawfulness of a regulation under the Hobbs Act, as to which perhaps there is exclusive jurisdiction in the D.C. Circuit, and an attack on a regulation in the context of an action between private parties as to which the district court would have to do some decision making, including giving Chevron deference to a regulatory agency's interpretation of a reg. Well, as I understand it, you have agency comes out with a regulation. The affected parties have 60 days to appeal to the D.C. Circuit. Following that, the regulation has the effect of law to which Chevron deference is owed under the Hobbs Act. And so far as the district court was concerned here, the appellate says, well, we don't like, if they have said that, they didn't. They've said that we don't like what the FCC held. The answer is we have no choice. We have to defer. Why are you in the same spot as in Dominguez? In Dominguez, the panel indicated that, if I understood it correctly, that they didn't have to address the FC. They rejected the premise of the argument that the FCC had, in fact, read out the random and sequential number generator requirement. And therefore, they didn't view it as a direct attack on the regulation so much as a fight about how the reg might apply. If that's true, why aren't you in exactly the same spot and there's not a subject matter jurisdiction problem here? Why is there not a subject matter? Your argument would have us stop by just saying district court didn't have jurisdiction. Over. I'm trying to, and that's a threshold matter for us. I'm trying to figure out whether we get past that in your view. If we look at this the way the Dominguez panel looked at it, don't we go past that because we're saying, well, this is not a head-on attack on the FCC's interpretation. It is a statement that the way the FCC interpreted it just doesn't fit this fact pattern. Do you understand what I'm trying to get at? To be frank, I don't. I do know, however, how to square. I do know how to cut through this and square the FCC's ruling and the slight confusion in Dominguez with the language of the statute. That's partially based on Judge Hardeman's ruling in Susina, which is a case that's in the briefs. The statute says to store, and then it has a disjunctive, or produce telephone numbers to be called, comp using a random or sequential number generator. So you have store separated by a disjunctive, produce. That's what Justice Scalia and Professor Garner referred to as the disjunctive conjunctive canon, and that basically means if it says or, it's interpreted as or. And then there's a third circuit, and there's a case in every circuit on that issue. Then you have the comma, and you have the phrase that defines or produce telephone numbers to be called. The defining phrase, using a random or sequential generator, is the rule of last antecedent means. So you think we could get to the, if there weren't forfeiture, we could get to the merits. I guess I'm saying, you think there's a way for us to view our colleague at the district court as having had subject matter jurisdiction and therefore this appeal being before us properly? I mean, they argued something different. They argued that predictive dialers are within the ambit of the FCC ruling and qualified under the statute. If you say to them, well, listen, folks, let's assume you didn't argue that, and let's just erase that, and then we get to the appeal here, and then in the third circuit, we consider, all right, well, did the FCC interpret the plain language of the statute properly? My answer is surely they did, because store is separated from produce, and they're defined by a phrase, and under the rule of last antecedent, that phrase, using a random or sequential number generator, defines the words that are before it, not what is before the disjunction. And so I say, if you were inclined to go there, you could, but they just made a totally different argument on page 174 of the appendix. They say that either it has to have random sequential number generating capacity or be able to dial without human intervention. So that's kind of a roundabout answer to your question, but I think you could square easily the language of the statute with the FCC holding and clarify that footnote in Dominguez, which says, well, geez, there seems to be an uncomfortableness here with the language. We don't quite understand what it means. Let the district court decide. I say, based on basic rules of interpretation and grammar, the statute is clear, and the FCC in 2003 interpreted it perfectly correctly and repeated that same interpretation in 2015. Would it be a clarification of the footnote in Dominguez or a rejection? It would be a clarification. Let me press you if I can about your interpretation here. The folks, your friends on the other side there, make the assertion, and again, this is assuming we got past forfeiture, that even if you accept the 2015 clarification from is something which necessarily means you need to have somebody come in and say, the platinum system here actually has that capacity, and they didn't do that. They just didn't do that. They had no evidence. If we got to that argument, why is that not a perfectly sound position to take, that there needs to be something which puts the case in a summary judgment posture where the district could look at this record and see it any other way than the way that the plaintiff sees it? If it walks like a duck, if it squawks like a duck, and it acts like a duck, it's a duck. This is technical machinery. It's not waddling and quacking like a duck. It's just sitting there, and who knows what's inside the little black box. Isn't that up to you guys to prove? And they're saying you didn't. If we got past the forfeiture. Our position in district court was, and still is here today, that predictive dialers were defined in 2003 as to qualify as automatic dialing machines under the law. The machine at issue in this case was called the Mercury Predictive Dialer. It wasn't the Mercury Predictive Dialer and the platinum system associated with it were specific things, not in front of the FCC. The FCC made some broad statements about how predictive dialers might fit the statutory definition of an automated dialing system. They didn't say, and the Mercury dialing system and platinum system are one of them. They didn't say that. Don't you have to prove that in order to get summary judgment to have some record evidence in front of the district court for it to say that FCC ruling fits this thing, this black box, this Mercury dialing system? So the law as it stood then and as it stands now was that the machines that dial off lists without human intervention qualify as... Automatic dialers. ...under the statute. That's what I was going to ask you. It seems to me that that was your proof. Yes. The need for, excuse me, the absence of human intervention was your proof that this is an auto dialer, right? And that it dialed off a list. Okay. Is there any other evidence in the record or is that really... I know you think that's all you need, but is there anything else in the record to support that the Mercury dialer is an auto dialer? Well, in addition to that, the name of the machine itself, it calls itself a predictive dialer. That, in our view, is evidence on the summary judgment record that we met our burden of going forward. It was on the defendant to put forth evidence sufficient for a jury, a reasonable jury to go either way, and they didn't do that. What about the other issue that you claim is forfeited, namely whether the dialer has the capacity to generate random or sequential numbers? Do we know anything about that or is the record just a blank slate on that because that issue was not really joined in the district court? We know that in district court they argued that a machine would qualify as an ATDS either because it has a random or sequential number generator or if it can dial off of lists without number generation. That is at appendix 174 at the bottom of the page, and I'll read to you. In other words, this court must determine whether the dialer has the capacity to, one, store or produce telephone numbers using a random or sequential number generator and two, has the capacity to dial numbers without human intervention. And it's your position that you chose to show number two without worrying about showing number one. Absolutely. Why bother? Yeah. Number one would have been a harder evidentiary list for you. Well, there is really no court thus far that has required that showing in the context of predictive dialers. Even though that's what the statute says, that's what's interesting about the case. I think Mr. Purr has a point to the extent that he argues that the FCC 2015 order seems to add requirements that are not really in the text of the statute. But I'm taking your response to that as too bad. The 2015 order under the Hobbs Act is the law of the land, and if someone wanted to challenge that as beyond the scope of the statute, they needed to bring the appropriate appeal of that order. I think the 2003 order is the origin of that. So 2015 repeats that piece of the holding and expands on it to the extent it wants to say potential capacity. That's the issue in this case. But it's an expansion, right? I mean, if we're being fair, and I think that's what precipitated the dissent from one or two commissioners of the 2015 order, right? I don't think it's an expansion. I think if you look at the plain language of the statute and interpret it in accordance with the basic canons of statutory interpretation, and you look at the disjunction or, and you follow the rule of last antecedent which you laid out in Cicino, I think you get to the exact point where the FCC got in 2003. I wish that they had saved a lot of trees by simply articulating the statutory interpretation as the basis for their decision. But I don't think that there was any confusion. Maybe it's sort of the immigrant learning language for the first time at some point and going back and looking at all the stuff. And me, but I just don't think that the statute is unclear, and I think that they interpret it. But even if you're wrong on that, it's your position. It doesn't matter. Even if I'm wrong on that, it doesn't matter. Because the legitimacy of the 2015 order as it relates to the statute is just not an issue. We must take that as a given. That's your position, right? Well, 2015, I'm not sure what Hobbs Act says about the binding effect of orders that are on appeal. But 2003, 60 days passed, nobody challenged it. Under the Hobbs Act, Chevron deference is owed. And this particular, this case, maybe other cases. 2015 dealt with issues, you know, is a cell phone like this, is it a dialer? Well, it has the potential capacity. Maybe it is, maybe it isn't. But 2003 dealt with predictive dialers squarely, head on. Okay. Hold on. You had, did you have film records? You didn't introduce them? We had the collection notes. All right. Positioned by the defendant. You didn't possess any film records yourself? No. That is sometimes not intuitive to judges. But our position in these cases is always that the defendant's records are probably the best indication and the best proof of the number of phone calls made. And that is because phone records frequently will omit phone calls that are less than 10, 20 seconds, depending on the phone company. And so the evidence that was before the judge or district court is really the best evidence that exists. And that assumes that the key question is whether or not they were made. That is, they were transmitted, not whether they were received. That's what the statute says. All right. And if we thought differently about receipt, then what would your answer be? If it wasn't waived, my answer would be that the polity that the statute is designed to promote, the protection of the public from unwanted telephone calls, would be best. In addition to strictly looking at the language of the law, the polity would be best promoted by holding companies to account for the phone calls that they make. Rather than putting the burden on the recipient to produce evidence about the phone calls that the recipient received on the recipient's end, which may be a burden that is extremely difficult to meet. Okay. Thank you, Your Honors. I just want to quickly just cite the record and move to the issue that Judge Sarek brought up, because I think that is entirely relevant, particularly in a remand situation. But I want to point to page in the record, A160 of 162, I mean, through 162. Those paragraphs are replete with identifying that the expert testimony, the technological capabilities of the testimony of Charlie Sharver regarding the remand situation, the fact that he was incapable of storing random or sequential phone numbers, has all been raised and was part of the summary judgment argument wrapped in and around the expert witness issue. Is that the same thing you were citing to us before? Yes, it is the same thing. I just wanted to point directly to the record, and it's multiple pages. It's in the appendix, appendix 160 of 162. Yes. Thank you, Your Honor. I want to address that issue that Judge Sarek raises, because it's critical, particularly in the remand situation. The trial court rejected the defendant's argument that defendants' own phone records, which only talk about an initiation of a call and speak to nothing as to the receipt of any call, is the evidence, the only evidence the plaintiff uses to go to trial. The trial court entered summary judgment on 146 calls, despite defendants' protestations otherwise, that each of those calls should have individually been something that we should have been able to present to the jury of the fact finder's determination. Why is it an illogical or improper understanding of the statute to say that whether or not somebody picks up a call, if you dial their phone and it rings or it buzzes in their pocket, you have interrupted them. You have disturbed their seclusion. Why is that not all by itself a statutory violation? Where do you get the receipt from? Because while Your Honor is correct and for purposes of the appeal say that if you received the telephone call and it rang or it buzzed, that in fact, that would satisfy the requirements as this court has noted in Cicino and other places of intrusion of privacy. Hold on just a second because I'm not sure we're using the word received in the same way and I want to make sure we are. You just said if you received the call because it buzzed or went off. I was sort of thinking received in the terms of take the call. But you're saying if it rings through, that's received. Even if you don't pick up, if it buzzes or it rings, that's your view of what received is. Had that evidence been before the trial court, that may have been sufficient to have granted summary judgment because there is no evidence. Why would the court not be within its discretion in reading the record to say if you've placed 146 calls? Because that's not what Congress said. Well, when you say that's what Congress said, I suppose one could assume that the Mercury dialing system is so terrible that it tries somebody 146 times and it never manages to make the phone on the other end ring. Or perhaps a district court looking at a record of 146 calls is in a position to say that's good enough evidence that this person's seclusion was disturbed.  I'll go to two things, Your Honor. One is there's a difference in the statutory definition. Congress specifically says when calling a residential telephone line, you initiate a call. Congress specifically says and changes the language when talking about a cellular telephone that you make a call. I could throw a rock at a window and not hit the window. Doesn't mean I didn't throw the rock. Just doesn't mean I didn't cause any damage. Someone could be calling my cell phone right now in my pocket that's off. My privacy hasn't been invaded. I have not had any intrusion upon my seclusion. The phone never rings. It doesn't vibrate. There's no record of a call. The TCPA, even when it gets down to its core components, says there must be something. And that's what Congress intended on the other end. So are you saying that all they needed to do on the other side was to put in an affidavit that said, yeah, my phone rang? Yes, and the plaintiff didn't do that. And the plaintiff in his deposition testimony is ambiguous. And so what would have to have happened in this case is we would have trial. We would go through 146 calls. But it is a small burden, Your Honor. But it is a burden nevertheless. And it wasn't met. And therefore, there is no genuine issue of material fact, which shouldn't have allowed the trial court to say, summary judgment, 146 calls, end of story, based on phone records that don't show whether those calls went through, whether they misfired, whether the phone wasn't even on, or any of those things. Is there evidence in the record that NRA stopped calling Manuel after it learned that his number was a cell number? Immediately. Well, how did they come to know that they were calling him then? He filed a... He testifies that he received some calls. That's part of the record. But he testified he received calls from lots of different people. He testified he didn't know the source of some of those calls. I guess what I'm asking is, if he didn't receive any calls from NRA, how would it be possible for NRA to stop calling him? The... The number isn't zero. But it's not 146. And it's up to the trier of fact to make the determination between those two numbers. Cicino said one call's enough. Correct, for that violation. But had Cicino... So you're conceding a violation. You're just saying the number is wrong. I'm conceding that in this... When I say a violation, not with respect to the other issues that we just previously argued. But yeah, that he testified he did receive some calls from what he identified as NRA. You're just saying 146 is the wrong number, even though your own record said 146. 146 is the number of initiated calls. It's not the number of calls that he received. Okay, all right. Thanks, we would just simply ask that the circuit court reverse and remand this case back to the trial court. All right. Thank you. Thank you, Mr. Perl. And thank you, Mr. Lindberg. Appreciate it. We'll take the case under advisement.